# William McCoy, Appellant, v. H. J. Brunot.

*Contract—Vendor and vendee.*

In an action of assumpsit it appeared that the suit was based on a promise made by defendant to pay the plaintiff for certain lots, if the latter would convey the same to a corporation. The plaintiff signed an article of agreement with the corporation to convey thirty lots, without describing them, or specifying what lots were to be conveyed. The evidence as to the price which was to be paid by defendant was vague and indefinite, but it showed that the plaintiff never conveyed the lots to the corporation, and that at the time of the suit he was still in possession of the land. *Held*, that a nonsuit was properly entered.

Argued Oct. 12, 1897.   Appeal, No. 83, Oct. T., 1897, by plaintiff, from order of C. P. Westmoreland Co., Feb. Term,

1896, No. 262, refusing to take off nonsuit. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ. Affirmed.

Assumpsit to recover the purchase price of thirty lots in the
town of Emmens. Before DOTY, P. J.

Plaintiff's statement was as follows :

The plaintiff, William McCoy, claims of the defendant, H. J.
Brunot, the sum of $9,000, with interest thereon from Decem-
ber 9, A. D. 1889, upon the cause of action whereof the follow-
ing is an amended statement :

1. The plaintiff, William McCoy, being the owner in fee sim-
ple, to wit, on and prior to December 9, A. D. 1889, and con-
tinuously since that time, of a certain tract of land situate in
the township of Hempfield, county of Westmoreland and state
of Pennsylvania, containing one hundred and forty acres, which
said tract of land was laid out in town lots ; streets and alleys
were marked out, and a large part of the said farm was plotted,
and known as the Emmens plan of lots, in the town of Emmens,
located on said farm, by the contract of him, the said William
McCoy, and his wife, Martha Jane McCoy, in writing, bearing
date the 9th day of December, 1889, (a copy of which said
agreement is hereto attached and made part hereof) agreeing as
aforesaid to convey to the Taylor Wire Nail Company, of Tren-
ton, New Jersey, by warranty deed, free of all incumbrances,
thirty lots of the aforesaid plan of lots, each forty by one hun-
dred and twenty feet, as laid out in the said town of Emmens,
on the farm of said plaintiff, north of Painterville, in Hempfield
township, Westmoreland county, and state of Pennsylvania, the
deeds for said lots by the terms of said agreement were to be
delivered when work on the nail works of the said The Taylor
Wire Nail Company was begun.

2. That prior to the time of the said agreement, to wit : on
the 　 day of 　　　　 , 18 , the said H. J. Brunot had
entered into an agreement or an arrangement with J. Clark
Williams, president of the said Taylor Wire Nail Company,
whereby he, the said H. J. Brunot, the defendant in this case,
agreed to pay to said Taylor Wire Nail Company the sum of
$15,000, in consideration and as a bonus that the said Taylor
Wire Nail Company would locate its works on or adjacent to

the farm of the said plaintiff, and the said H. J. Brunot, the defendant in this case, at and before the execution of the said agreement by the plaintiff with the said Taylor Wire Nail Company, bearing date the 9th of December, A. D. 1889, representing to the said plaintiff that he, the said H. J. Brunot, had agreed to pay the said Taylor Wire Nail Company the said sum of $15,000, as a bonus and consideration for the location of their nail works at or near the said premises; which said money he, the said H. J. Brunot, did not have, and the said H. J. Brunot further representing to the said plaintiff that the said Taylor Wire Nail Company would accept the lots in the said plan in lieu of the cash which he, the said H. J. Brunot, was to pay, and the price of said lots was fixed at $300 each. And the said H. J. Brunot, the defendant, then and there undertook, promised and agreed with the plaintiff to pay to the said plaintiff the sum of $300 for each and every lot, making the sum of $9,000 in all, which said H. J. Brunot, the defendant, promised to pay to the said plaintiff in the following spring, to wit: in the spring of 1890, in consideration that the said plaintiff and his wife enter into a written agreement as aforesaid with the Taylor Wire Nail Company on December 9, 1889, for the conveyance of thirty lots in said plan, each 40 by 120 feet; and the said plaintiff relying upon the said promises of the said H. J. Brunot, the defendant, to pay to him, the said plaintiff, the contract price of the said thirty lots, amounting to the sum of $9,000, in the spring of 1890, made and executed the said agreement with the said Taylor Wire Nail Company for the sale of the said thirty lots on December 9, 1889; and the said H. J. Brunot had obtained and received from the said Taylor Wire Nail Company, credit upon the amount in cash which he had agreed to pay the said Taylor Wire Nail Company, as hereinbefore set forth, to the extent of the contract price of said lots, to wit: the sum of $9,000.

3. The plaintiff having executed the said contract to convey the said thirty lots to the said Taylor Wire Nail Company, the said nail company thereupon released and relieved the said H. L. Brunot from the payment of $9,000 of the cash which he, the said H. J. Brunot, had undertaken and agreed to pay to the said nail company as a bonus, and for which cash he, the said H. J. Brunot, was to receive a certain amount of capital

stock in the said nail company, and, in lieu of the cash, which the said H. J. Brunot was to pay to the said nail company and for which the said H. J. Brunot was to receive the capital stock of the said nail company; the said Taylor Wire Nail Company accepted the contract of the plaintiff to convey to the said Taylor Wire Nail Company the thirty lots aforesaid, which said contract bears date December 9, 1889, in lieu of the cash that was to be paid by the said H. J. Brunot, to the extent of the contract price of the said lots, to wit: the sum of $9,000, and the Taylor Wire Nail Company issued its stock to the said H. J. Brunot for the thirty lots which the plaintiff agreed to convey to the Taylor Wire Nail Company aforesaid. By the plaintiff executing the said contract to convey the said thirty lots to the said Taylor Wire Nail Company, as aforesaid, the said H. J. Brunot was relieved from paying in cash to the said nail company, $9,000 of the amount which he, the said H. J. Brunot, was to pay to the said nail company, and the said H. J. Brunot, received the capital stock of the said nail company for the lots agreed to be conveyed by the said plaintiff to the said nail company, as aforesaid, and in consideration of the agreement by the plaintiff with the Taylor Wire Nail Company, on December 9, 1889, the said H. J. Brunot, defendant, undertook, promised and agreed with the plaintiff that he, the said H. J. Brunot, would pay to the said plaintiff the contract price of said lots, to wit: the sum of $9,000, in the spring of 1890, and the said plaintiff, relying upon promises of the said H. J. Brunot, defendant, to pay the said sum of $9,000 to the said plaintiff in the spring of 1890, made and executed an agreement with the said Taylor Wire Nail Company, dated December 9, 1889, and by reason thereof the said cash, amounting to the sum of $9,000, remained in the hands of the said H. J. Brunot, and was due, owing and payable to the said William McCoy, plaintiff, according to the arrangement between the said Brunot and the said nail company, and according to the express and distinct promise and agreement of the said H. J. Brunot, defendant, to pay the said sum of money, to wit: the sum of $9,000 to the said plaintiff for the thirty lots, and the said defendant, H. J. Brunot, having been relieved from payment of the cash to the said nail company by the substitution of the said thirty lots of the plaintiff, he, the said H. J. Brunot, then and there agreed to pay to

the said plaintiff the contract price of the said thirty lots, to wit: $9,000 in the spring of 1890.

4. The said plaintiff is now, and always has been, since the making of the contract bearing date December 9, 1889, as aforesaid, ready, able and willing to perform all and singular his agreement and the covenants in said contract mentioned and contained, and duly tendered to the said The Taylor Wire Nail Company, a proper deed of conveyance for said thirty lots, each 40 by 120 feet, free from all incumbrances, as provided in said agreement, and demanded from the said defendant payment of the consideration money for said agreement, to wit, the sum of nine thousand dollars, which was due, owing and payable by the said defendant to the said plaintiff according to the tenor and effect of the express agreement between the said plaintiff and the said defendant, which said tender and demand was made as aforesaid. The said defendant has refused and still refuses to pay to the said plaintiff the amount of money due to the plaintiff by the defendant, to wit: the sum of nine thousand dollars, to the damage and injury of the plaintiff in the said sum of nine thousand dollars; copy of said deed is hereto attached and made part hereof.

5. The said defendant, on December 9, 1889, at and before the said contract was signed by the plaintiff with the Taylor Wire Nail Company for the conveyance of said thirty lots, then and there undertook, promised and agreed with the plaintiff that if the said plaintiff would make and execute said contract in writing to convey said thirty lots, 40 by 120 feet, to the said Taylor Wire Nail Company, on December 9, 1889, he, the said defendant, would pay the said plaintiff the price of or value of said lots, to wit: the sum of nine thousand dollars, in the following spring, to wit: in the spring of 1890, as this arrangement would relieve him, the said H. J. Brunot, from putting that amount in cash into the said works, or from paying that amount of cash into the treasury of the said Taylor Wire Nail Company.

6. The said H. J. Brunot, defendant, is therefore justly indebted to the said plaintiff in the said sum of nine thousand dollars, with interest thereon, as aforesaid, on the claim above stated; which said sum of nine thousand dollars, with interest, as aforesaid, is justly due by defendant to the plaintiff.

Articles of agreement made and concluded December 9, A. D. 1889, between William McCoy and Martha Jane Mc-Coy, his wife, of Hempfield township, Westmoreland county, state of Pennsylvania, parties of the first part, and "The Taylor Wire Nail Company," of Trenton, New Jersey, party of the second part, as follows, to wit: The said parties of the first part agree to convey to the said party of the second part, by warranty deed, free of all incumbrances, thirty lots, 40 feet by 120 feet, as laid out in the town of Emmens, on the farm of said parties of the first part, north of Painterville, Hempfield township, Westmoreland county, state of Pennsylvania.

In consideration whereof the said "The Taylor Wire Nail Company," party of the second part, agrees to locate, erect and establish a nail works in the town of Emmens, township, county and state aforesaid. The said party of the second part further agrees to begin work on the building of said nail works within thirty days from the date of this agreement, and to carry forward with due diligence the work of erecting said plant to completion.

The said parties of the first part agree to execute and deliver the deeds for said conveyances when work on the said nail works is begun.

This agreement is to bind as well the legal representatives of both parties as the parties themselves.

In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

      WM. McCOY,       [Seal.]
      MARTHA JANE McCOY,       [Seal.]
      J. CLARK WILLIAMS,       [Seal.]
         Pres. Taylor Wire Nail Co.

At the trial the evidence on behalf of the plaintiff tended to support the averments of the statement.

Counsel for defendant moved for a compulsory nonsuit because the claim in this case being founded on a promise made by defendant to pay the plaintiff for certain lots if he would convey the same to the Taylor Wire Nail Company, and the plaintiff having signed an article of agreement with the Taylor Wire Nail Company to convey thirty lots, which article of

agreement is void for want of certainty, and the same not being capable of being forced, and there being no claim that the plaintiff ever conveyed those lots to the Taylor Wire Nail Company, the contract between plaintiff and defendant is therefore void for want of mutuality and the same cannot be enforced.

The court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiff appealed.

*Error assigned* was refusal to take off nonsuit.

*George S. Rumbaugh,* with him *D. S. Atkinson* and *John M. Peoples,* for appellant.—This being an appeal from an order of the court refusing to take off a compulsory nonsuit, all the evidence offered in behalf of plaintiff must be accepted as true. The plaintiff is entitled to every reasonable inference or fact that the jury might draw from the evidence, and every relevant fact which the testimony tends to establish is to be treated as admitted by the defendant. When tested by that rule, the plaintiff's testimony tends to make out a prima facie case, and it is error to enter a judgment of nonsuit or to refuse to take off said judgment: Corbalis v. Newberry Twp., 132 Pa. 9; Maynes v. Atwater, 88 Pa. 496; Bucklin v. Davidson, 155 Pa. 362; Fisher v. Monongahela C. Ry. Co., 131 Pa. 292.

The fact that the defendant had liens against the land of the plaintiff would not be a sufficient reason for refusing the deed when plaintiff allowed him to retain money enough to pay all the liens, as it has been said that "a pecuniary charge against a good title presents no objection provided the purchaser can be protected against it:" Thompson v. Carpenter, 4 Pa. 132.

*James S. Beacom,* with him *David L. Newill,* for appellee.— In a contract of sale of land, the price and all the terms of sale must be specifically set out, and unless both the consideration and the subject-matter of the contract are clearly defined and certain, the contract is legally incomplete and void: Soles v. Hickman, 20 Pa. 180; Ferguson v. Staver, 33 Pa. 411; Hammer & Dauler v. McEldowney, 46 Pa. 334; Burns & Stevenson v. McCabe, 72 Pa. 309.

Unless the description in the deed is certain, nothing short of delivery of possession and designation of the lines by the

parties is sufficient to take the case out of the statute of frauds, and parol testimony is not admissible to establish any essential part of it: Troup v. Troup, 87 Pa. 149; Mellon v. Davison, 123 Pa. 298; Peart v. Brice, 152 Pa. 277.

The contract being absolutely void and not capable of being enforced, the plaintiff has not suffered the slightest injury from having signed the same, and cannot, therefore, claim anything from defendant on that ground.

PER CURIAM, October 25, 1897:

This appeal is from the refusal of the court below to take off the judgment of nonsuit. Our consideration of the evidence, on which the plaintiff relied, has satisfied us that no error was committed in denying his motion. Neither a review of the testimony, nor a discussion of the questions involved would serve any useful purpose. The assignment of error is dismissed and the judgment affirmed.